**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG DIVISION**

AMERICAN MODERN HOME
INSURANCE COMPANY,

Plaintiff,

v. CIVIL ACTION NO. 6:06-cv-01015

JEFF CORRA, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the plaintiff's Motion for Summary Judgment [Docket 42]. For the reasons herein, the motion is **GRANTED in part** and **DENIED in part**.

**I. Factual and Procedural Background**

The issue in this case is whether defendant Jeff Corra's homeowner's insurance policy (the "policy"), purchased from the plaintiff, American Modern Home Insurance Company ("American"), provides coverage for personal-injury liability and medical costs that arose from an automobile accident involving underage drinking.

Tragic facts underlie this dispute. On the evening of August 5, 2006, Morgan Brown, Joshua Tucker, Matthew Humphreys, and Courtney McDonough, attended a social gathering at Mr. Corra's home (the "residence") as guests of Mr. Corra's nineteen-year-old daughter Ashli. Ashli Corra and her friends consumed alcohol at the residence. They were all under the legal drinking age of twenty one. Mr. Corra was present at the residence, however, he contends that while Ashli and her friends were inside the residence, he was outside burning brush for much of the evening.

At some point in the evening, after consuming half of a can of beer from Mr. Corra's refrigerator, Ms. McDonough left with others to purchase more alcohol. Ms. McDonough and the others then returned to the residence. Ms. McDonough then consumed six or seven more beers. Then, around three o'clock in the morning on August 6, using an automobile owned by Joseph McCoy, Ms. McDonough drove with Ms. Brown, Mr. Tucker and Mr. Humphreys to purchase more alcohol from a local convenience store. On the way back from the store, Ms. McDonough lost control of the automobile and collided with a tree. The vehicle flipped, and its occupants were ejected. Mr. Humphreys and Mr. Tucker were killed, and Ms. Brown was severely injured.

**A. The Criminal Proceedings**

State criminal prosecutions followed. Ms. McDonough was charged with, and pleaded guilty to, two counts of driving while under the influence of alcohol causing death and one count of driving while under the influence of alcohol causing bodily injury. On September 15, 2006, Mr. Corra was indicted on nine counts of knowingly furnishing "alcoholic liquors" to underage persons, in violation of W. Va. Code section 60-3-22a(b).[1] A jury convicted Mr. Corra on four counts of furnishing beer to minors. Mr. Corra was acquitted, however, on counts charging him with providing alcohol to Mr. Tucker and Mr. Humphreys.

On appeal, the Supreme Court of Appeals of West Virginia overturned Mr. Corra's conviction. It observed that Mr. Corra had been charged with providing "intoxicating liquor" to minors, but that the jury was instructed that it could find Mr. Corra guilty if he furnished "beer" to

[1] Section 60-3-22a(b) of the West Virginia Code provides, "Any person who shall knowingly buy for, give to or furnish to anyone under the age of twenty-one to whom they are not related by blood or marriage, any alcoholic liquors from whatever source, is guilty of a misdemeanor . . . ."

minors. Under West Virginia law, the court explained, "beer" could include "nonintoxicating beer," which is not an "intoxicating liquor" under W. Va. Code section 66-3-22a(b). Thus, Mr. Corra "was convicted of a different crime than that for which he was indicted." *State v. Corra*, 678 S.E.2d 306, 313 (W. Va. 2009). The court reversed the conviction and prohibited a retrial.

**B. The Civil Proceedings**

On August 22, 2006, Mr. Corra notified American that "[t]wo minors were injured and two were killed in an automobile accident after leaving [Mr. Corra's] home as guests of his daughter." (Compl., Ex. B at 2.) In September 2006, Ms. Brown and the estates of Mr. Tucker and Mr. Humphreys (collectively, the "Claimants") notified Mr. Corra that they intended to bring claims under Mr. Corra's homeowner's insurance policy for damages arising out of the accident. Ms. Brown advised Mr. Corra that she intended to proceed against him under his homeowner's insurance policy for her injuries. (Compl., Ex. D [Docket 1].)[2] In a separate letter, the estates of Mr. Tucker and Mr. Humphreys also notified Mr. Corra of possible claims against him. (Compl., Ex. C.) Specifically, they claimed that "Mr. Tucker and Mr. Humphreys died as a result of the injuries they sustained in one vehicle crash on August 6, 2006, while they were riding as passengers in a 2000 Jeep operated by Courtney McDonough." (*Id.*) "Prior to the crash," the letter noted, "Mr. Tucker, Mr. Humphreys and Ms. McDonough, all of whom were under the age of twenty-one (21) years, were social guests on your premises where alcohol was purportedly consumed by persons under the age of twenty one (21) years." (*Id.*)

[2] Though Ms. Brown's letter indicates that Ms. McDonough was driving the car at the time of the accident, it makes no mention of events at Mr. Corra's home. (*Id.*)

On December 4, 2006, American filed this action against Mr. Corra, Ms. McDonough, and the Claimants, seeking a declaratory judgment that it is neither "required to provide a defense or indemnification under the subject policy for the claims of [the Claimants]," nor "to provide medical payments to others coverage under the subject policy to [the Claimants]." (Compl. ¶¶ 32, 33.)[3] American also seeks attorneys' fees and costs. American now moves for summary judgment on its declaratory judgment action [Docket 42].

## II. Subject Matter Jurisdiction

Before addressing the merits underlying the Complaint, I must first determine whether this court possesses subject matter jurisdiction over this dispute.

The Declaratory Judgment Act states, "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is sought." 28 U.S.C. § 2201(a). The Fourth Circuit has explained that,

> a federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Const. Equip. North Am., Inc. v. CLM*, 386 F.3d 581, 592 (4th Cir. 2004) (internal quotation marks omitted).

As to the first prong, "[a] case meets the actual controversy requirement only if it presents a controversy that qualifies as an actual controversy under Article III of the Constitution." *Id.* An

---

3 Ms. McDonough has since been dismissed from this action [Docket 55].

actual controversy requires "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972). This case presents an actual controversy. Mr. Corra has submitted a claim to American to indemnify and defend him, American denies that it has a duty to do so, and a judicial decision will likely resolve the dispute. Therefore, the first prong is met.

On the second prong, this court possesses an independent basis for jurisdiction. The parties are completely diverse. The Complaint alleges that American is an Ohio corporation with its principal place of business there and that the defendants are West Virginia residents. It also states that the amount in controversy exceeds $75,000. Therefore, this court possesses jurisdiction under 28 U.S.C. § 1332.

Finally on the third prong, the court would not abuse its discretion by exercising jurisdiction over this case. While a district court has discretion whether to exercise its jurisdiction under the Declaratory Judgment Act, it must have a "good reason" not to do so. *Volvo*, 386 F.3d at 594 (internal citations omitted). The court must rule on the merits of a declaratory-judgment action "when declaratory relief will serve a useful purpose in clarifying and setting the legal relations in issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (internal quotation marks omitted). Here, declaratory relief will serve a useful purpose for the legal relations at issue by determining whether the policy covers the Claimants' claims. Furthermore, a declaratory ruling will provide certainty to the parties by setting forth American's duties under the policy. Finding no "good reason" not to exercise jurisdiction, I must address the merits of American's claims.

**III. Standard of Review**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court views all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

**IV. Discussion**

By the Complaint, American seeks two declarations. First, it contends that has no duty to defend or indemnify Mr. Corra under the "Personal Liability" clause of the policy. Second, American asserts that it has no duty to pay for the Claimants' medical expenses under the "Medical Payments to Others" clause. It also seeks attorneys' fees and costs. I will address each contention in turn.

**A. American Has No Duty to Defend and Indemnify**

American argues that it has no duty to defend or indemnify Mr. Corra. "When there is any question about an insurer's duty to defend under an insurance policy, such question must be construed liberally in favor of an insured." *Butts v. Royal Vendors, Inc.*, 504 S.E.2d 911, 916 (W. Va. 1998) (internal quotation marks omitted). In determining whether the allegations of a complaint can reasonably be interpreted as a claim covered by the terms of an insurance policy, courts are not bound by the specific language in the complaint; they must instead look to the nature of the claim. *See W. Va. Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 496 (W. Va. 2004) (finding that, despite allegations of negligence, the gravamen of the complaint was intentional conduct); *Bruceton Bank v. U.S. Fidelity & Guar. Ins. Co.*, 486 S.E.2d 19, 25 (W. Va. 1997). For instance, a claimant may not "trigger insurance coverage by characterizing allegations of [intentional] tortious conduct under the guise of 'negligent' activity." *Horace Mann Ins. Co. v. Leeber*, 376 S.E.2d 581, 587 (W. Va. 1988) (alteration in original).

The "Personal Liability" clause of the policy states, in pertinent part,

> If a claim is made or suit is brought against any insured person for damages because of bodily injury or property damage, caused by an occurrence, to which this coverage applies, [American] will . . . pay up to our liability limit for damages for which the insured person is legally liable, except for punitive or exemplary damages . . . . [and] provide a defense at our expense by counsel of our choice.

(Compl., Ex. A at 12 (emphasis omitted).) American's duty to indemnify and defend claims under the policy only for damage caused by an "occurrence." The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results" in "bodily injury" or "property damage." (*Id.* at 2.)

The parties have disputed the nature of the claims asserted by the Claimants. American contends the claims are based on Mr. Corra's "provision of alcohol to persons under the age of 21." (Compl. ¶¶ 21, 23, 27; Pl.'s Mem. Supp. Summ. J. 8-9.) The Claimants, however, assert that their claim is based on Mr. Corra's providing a place for underage drinkers to become intoxicated. (Morgan Mem. Opp'n Pl.'s Mot. Summ. J. 6; Humphreys Mem. Opp'n Pl.'s Mot. Summ. J. 4, 6; Tucker Mem. Opp'n Pl.'s Mot. Summ. J. 4, 7.)[4]

Finding the Claimants' interpretation of their claims to be reasonable, I certified the following question to the Supreme Court of Appeals of West Virginia:

> The homeowner's policy in effect at the time of the underlying events provides for an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period in . . . bodily injury or property damage." Under West Virginia law, does knowingly permitting an underage adult to consume alcoholic beverages on a homeowner's property constitute an "occurrence" within the meaning of the [American] homeowner's policy at issue in this case?

(Order Certification 1-2 [Docket 80].) Answering this question in the negative, the Supreme Court of Appeals held that an "occurrence," as defined by the policy, "does not provide coverage where the injury or damage is allegedly caused by the homeowner's conduct in knowingly permitting an underage adult to consume alcoholic beverages on the homeowner's property." *Am. Modern Home Ins. Co. v. Corra*, 671 S.E.2d 802, 807 (W. Va. 2008). In short, the Claimants' injuries were not caused by an occurrence.

---

[4] The Claimants assert that Mr. Corra had some awareness that underage drinking was occurring at his home. (Brown Mem. Opp'n Pl.'s Mot. Summ. J. 9; Humphreys Mem. Opp'n Pl.'s Mot. Summ. J. 4 (alleging that Mr. Corra "saw underage drinkers . . . and did not cease the activities on his property"); Tucker Mem. Opp'n Pl.'s Mot. Summ. J. 4 (same).) Mr. Corra does not dispute these allegations but emphasizes that he did not *provide* any alcohol to underage persons.

Given the ruling by the Supreme Court of Appeals, American has no duty to defend or indemnify Mr. Corra for claims based on his knowing permission of underage drinking on his property. Because American has no such duty as a matter of law, American's Motion for Summary Judgment is **GRANTED** with respect to Count I of the Complaint.

**B. There Are Genuine Issues of Material Fact as to American's Duty to Pay Medical Expenses**

American also seeks a declaration that it has no duty to pay the Claimants' medical expenses and seeks summary judgment on this claim. Regarding "Medical Payments to Others," the policy provides that "[American] will pay the necessary medical expenses incurred within three (3) years from the date of an accident causing bodily injury. . . . As to others, this coverage applies only . . . to a person off the insured premises, if the bodily injury . . . is caused by the activities of any insured person." (Compl., Ex. A at 12 (emphasis omitted).)

The policy contains, however, several exclusions. In particular, American asserts that the intentional-acts, criminal-acts, and motor vehicle exclusions apply and excuse it from providing coverage. "When a policyholder shows that a loss occurred while an insurance policy was in force, but the insurance company seeks to avoid liability through the operation of an exclusion, the insurance company has the burden of proving the exclusion applies to the facts in the case." *Farmers & Mechs. Mut. Ins. Co. of W. Va. v. Cook,* 557 S.E.2d 801, 806 (W. Va. 2001).

As explained below, genuine issues of material fact remain on this issue. Therefore, American's request for summary judgment on this claim must be **DENIED**.

**1. The Intentional-Acts Exclusion**

The intentional-acts exclusion of the policy provides that American will not pay medical costs for bodily injury or property damage "resulting from intentional acts caused by or at the

direction of an insured person. This [exclusion] applies whether or not the resulting bodily injury or property damage was expected or intended." (Compl., Ex. A at 13 (emphasis omitted).) American argues that it is excused from providing medical coverage to the Claimants under this provision, because Mr. Corra intended the acts that caused the Claimants' injuries. (Pl.'s Mem. Supp. Mot. Summ. J. 13-14.)

"[L]anguage in an insurance policy should be given its plain, ordinary meaning." *Bender v. Glendenning*, 632 S.E.2d 330, 336 (W. Va. 2006) (internal quotations, citations, and alterations omitted). If, however, "the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." *Stanley*, 602 S.E.2d at 490 (internal quotations omitted). Any ambiguities in the language must be construed in favor of the insured. *Id.* at 490-91.

Not every act is intentional. "Intent" usually indicates a state of mind with respect to the consequences of an action. *See* RESTATEMENT (SECOND) OF TORTS § 8A ("The word 'intent' is used . . . to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it."). Lest every act be labeled "intentional," an intentional act is distinct from a "reckless" or "negligent" act. *See Hensley v. Erie Ins. Co.*, 283 S.E.2d 227, 232 (W. Va. 1981) ("[C]ourts recognize that a substantial distinction exists in regard to the degree of culpability between an act done by the purposeful intent of the insured and an act based on gross negligence.").

The Claimants assert that their injuries were caused by Mr. Corra's negligence in providing a place for underage persons to drink alcohol. To prevail on this claim, they need not show that Mr. Corra intended to do the acts that caused the Claimants injuries—a showing of negligence would

suffice. On this record, it is not even clear what Mr. Corra did on the night of the accident, let alone whether he acted intentionally, recklessly, or negligently. Without evidence on Mr. Corra's state of mind, I cannot determine whether the intentional-acts exclusion precludes medical coverage for the Claimants under the policy's Medical Payments to Others clause, and American's motion for summary judgment based on this exclusion must be **DENIED**.

**2. Criminal-Acts Exclusion**

Likewise, summary judgment is inappropriate based on the policy's criminal-acts exclusion. That exclusion excludes coverage for bodily injuries and property damage "arising out of any criminal act." (Compl., Ex. A at 13.) A criminal conviction is not necessary to trigger this exclusion. It merely requires that the injury be caused by a "criminal act." American contends, that Mr. Corra caused the Claimants' injuries by providing alcohol to them, that doing so was a crime, and that coverage must therefore be denied.

On the evidence thus presented, summary judgment based on this exclusion would be inappropriate. The Claimants allege that Mr. Corra negligently provided a place for minors to consume alcohol and that negligence proximately caused their injuries. But there is a dearth of evidence in the record as to what Mr. Corra did and what his state of mind was on the evening of August 5, 2006. Although it is certainly possible that Mr. Corra committed a criminal act, it is equally possible that he did not. As such, there are simply too many facts left in dispute for the court to rule, as a matter of law, that American is entitled to judgment.

Furthermore, the jury verdict in Mr. Corra's trial is a legal nullity and the facts found in that proceeding carry no preclusive effect here. In West Virginia, collateral estoppel (or issue preclusion) requires that (1) the issue decided in a previous action be indentical to the one in the

instant action; (2) there was "a final adjucation on the merits" in the prior action; (3) the party against whom the doctrine is being invoked was a party in the prior action; and (4) the party against whom the doctrine is being invoked had "a full and fair opportunity to litigate the issue in the prior action." *Holloman v. Nationwide Mut. Ins. Co.*, 617 S.E.2d 816, 821 (W. Va. 2005). Mr. Corra's conviction was vacated by the Supreme Court of Appeals. Therefore, there is no final judgment on the merits, and the jury's findings carry no weight in this case. *Cf. No East-West Highway Comm., Inc. v. Chandler*, 767 F.2d 21, 24 (1st Cir. 1985) ("A vacated judgment has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case.") (citing *De Nafo v. Finch*, 436 F.2d 737, 740 (3d Cir. 1971), and 18 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4432 at 302 (1981)); *Zeneca Ltd. v. Novopharm Ltd.*, 919 F.Supp. 193, 196 (D. Md. 1996) ("As a general rule, a vacated judgment and the factual findings underlying it have no preclusive effect; the judgment is a legal nullity."). Because genuine issues of material fact remain with respect to whether Mr. Corra's conduct was criminal, American is not entitled to summary judgment based on the criminal-acts exclusion.

**3. Motor Vehicles Exclusion**

American further asserts that the policy's motor vehicles exclusion negates its duty to pay the Claimants' medical expenses. The policy excludes coverage for bodily injuries and property damage caused by

> (1) the ownership, maintanence, occupancy, operation, use . . . of motor vehicles . . . owned or occupied by or rented or loaned to an insured person;
> (2) the entrustment by an insured person of a motor vehicle . . . to any person;
> (3) vicarious liability . . . for the actions of a child or minor involving a motor vehicle . . . ; [or]
> (4) [the] failure to supervise, or negligent supervision of, any person involving a motor vehicle or other motorized land conveyance by an insured person.

(Compl., Ex. A at 14 (emphasis omitted).) Specifically, American contends that the fourth exclusion applies and that it is entitled to summary judgment on this claim. I disagree.

The accident in this case involved an automobile owned by Joseph McCoy and driven by Courtney McDonough. It is not apparent to the court that Mr. Corra had any duty or authority to supervise the use of that automobile. There are genuine issues of material fact as to Mr. Corra's conduct. Therefore, summary judgment based on the motor vehicle exclusion is also inappropriate.

**C. Attorneys' Fees and Costs**

Finally, American seeks attorneys' fees and costs, pursuant to W. Va. code section 55-13-10. (Compl. ¶ 35.) That section provides that "in any proceeding under this article, the Court may make such award of costs as may seem equitable and just." For reasons appearing to the court, this request is **DENIED**.

**IV. Conclusion**

For the reasons discussed above, American's Motion for Summary Judgment with respect to its duty to defend and indemnify Mr. Corra is **GRANTED**, but its Motion for Summary Judgment with respect to its duty to provide medical coverage is **DENIED**. I also **DENY** American's request for attorneys' fees and costs.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 22, 2009

Joseph R. Goodwin, Chief Judge